NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

23-139

ILES MEDICAL TESTING, LLC

VERSUS

RRF PROPERTIES, LLC

**********

APPEAL FROM THE
LAKE CHARLES CITY COURT
PARISH OF CALCASIEU, NO. 21-1674
HONORABLE JAMIE B. BICE, CITY COURT JUDGE

**********

D. KENT SAVOIE
JUDGE

**********

Court composed of D. Kent Savoie, Van H. Kyzar, and Sharon Darville Wilson, Judges.

AFFIRMED.

**Skipper M. Drost**
**Drost Law Firm, LLC**
**411 Clarence Street**
**Lake Charles, LA 70601**
**(337) 436-4546**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **RRF Properties, LLC**

**Brad Guillory**
**Christopher S. LaCombe**
**Guillory Hargrave & LaCombe, LLC**
**940 Ryan Street**
**Lake Charles, LA 70601**
**(337) 433-5297**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Iles Medical Testing, LLC**

**SAVOIE, Judge.**

Defendant, RRF Properties, LLC ("RRF"), appeals a city court judgment awarding Plaintiff, Iles Medical Testing, LLC ("Iles Medical"), with $50,000.00 in damages and $12,500.00 in attorney fees as a result of RRF's bad faith termination of a lease agreement with Iles and its failure to reimburse Iles for improvements made to the leased building. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

RRF, which is owned solely by Dr. Rita Rae Fontenot ("Dr. Fontenot"), leased a 5,000 square foot building located at 3729 Ryan Street in Lake Charles ("the building") to Iles Medical, which is owned solely by Dorothy Isles ("Ms. Iles"), pursuant to a lease agreement effective August 1, 2020. The three-year lease contemplated rent at $3,000.00 per month, as well as a $3,000.00 security deposit. At the time the lease was signed, the building was in poor condition, and Iles Medical made improvements and repairs in an effort to begin its business operations. Iles Medical provides drug testing, occupational health, and DNA services, as well as TWIC enrollment services.

Hurricane Laura made landfall in Lake Charles on August 27, 2020. The building sustained damages, and, according to the parties, a renovation company gutted the building several days after the storm. Dr. Fontenot and Ms. Iles regularly communicated about the building via text messages. On September 22, 2020, Ms. Iles sent a text to Dr. Fontenot asking what she should do regarding rent payments. Dr. Fontenot responded with a text, which stated in part:

> I appreciate you even asking[,] but I will not hold you to lease payments when you are not in a building.

> Technically with the disaster I could just void the lease but I would not do that to you and leave you in the cold. . . . We will rebuild."

On January 26, 2021, Dr. Fontenot sent a text to Ms. Iles stating that she "finally got insurance money coming now so the whole building is on track to be finished[]" and that she was meeting with a contractor that afternoon to "get them working on this primary job[.]"

On February 3, 2021, Ms. Iles sent a text message to Dr. Fontenot informing her that a Fed Ex package addressed to RRF had been delivered, and Dr. Fontenot indicated that it might be her insurance check. On February 4, 2021, Dr. Fontenot texted Ms. Iles saying she received the Fed Ex envelope with the insurance check and asked Ms. Iles to meet with her at Rikenjacks, which is a business that was across the street from the building.

Dr. Fontenot, Ms. Iles, and Ms. Iles's husband met at Rikenjacks on February 4, 2021. Dr. Fontenot indicated that the purpose of the meeting was to renegotiate the lease due to insufficient insurance proceeds and her contractor threatening to quit. According to Ms. Iles, Dr. Fontenot informed her that the insurance proceeds were not what she had expected and that she wanted to increase the monthly rent to $5,000.00 per month. Also according to Ms. Iles, repairs on the building were progressing well, although at a slow pace, the walls had been installed, and some of the ceiling was still missing. Also according to Ms. Iles, Dr. Fontenot was making upgrades to the building, such as recessed lighting, and Dr. Fontenot had included her in decision making concerning the choice of flooring, paint, and cabinets.

On February 17, 2021, Dr. Fontenot sent a text message to Ms. Iles asking what she had decided after the meeting. Ms. Iles responded, "Nothing's changed, our only option at this point is to move forward." Dr. Fontenot then stated via text message:

Then we have to renegotiate the lease to $5000/month[.] . . . Otherwise I have an offer somebody wants to buy the building and I would rather just wash my hands of the whole thing and sell it, but [if] I have to continue to sink money into it, [t]hen I need to know that I will at least have a decent [f]air market lease.

Ms. Iles responded and refused to agree to the proposed rent increase or lease renegotiation, stating:

We've waited all this time . . . at your request. We had the opportunity to get another location but we had to miss out . . . . [W]e initially chose to lease the building when it was unable to lease for fair market value. [W]e then took a chance and invested money that ultimately allowed the building to later appraise for more money after the hurricane.

Dr. Fontenot sent a text message in response stating, "Well I'll have to terminate the lease[,] and then I'll just return the money you invested out of respect for you[.]" Her text messages further stated:

It's not fair to me to not renegotiate to fair market value. You are getting a new building . . . [.]

. . . .

. . . I am having to pay for a loan [o]n this building with no help from SBA or anyone including insurance. So at least I need a lease with fair market value[.] Not pre-storm value [b]ecause this is not going to be a pre-storm building when it finally does get complete[.] All of the lighting is changed and all of the HVAC is changed to brand spanking new and all of the new flooring in over half of the building is changed[.] And the roof itself is over $55,000[.] This is not your pre-storm building[.] All of the ceiling is changed[.] It's a completely new building[.]

. . . .

. . . [Y]ou only put [$]20,000 more into the building which I will be refunding if this lease is not renegotiated and is terminated. . . .

. . . .

You were getting a new building. I deserve fair market value. . . . We either renegotiate this lease or, [a]ccording to the terms of the current lease, I have the right to terminate it.

3

On March 1, 2021, Dr. Fontenot, on behalf of RRF, sent a letter to Iles Medical regarding the building. The letter states in part: "In accordance with Paragraph 17 [of the lease], the above referenced property is so badly damaged that I have determined the necessary repairs and improvements cannot be completed in a reasonable timeframe and at a reasonable expense. Accordingly, I am exercising my right to terminate the lease."

Paragraph 17 of the lease states:

### 17. DAMAGE TO PROPERTY

If the premises be damaged by fire or other casualty, it shall be repaired by Lessor to the amount of insurance collected; in the case that with reasonable diligence it cannot be repaired for the insurance collected within thirty (30) days from the occurrence of such damage, the rent shall be adjusted from the time of the damage until the repairs are made; if the building cannot be made fit for occupancy in accordance with the above within (60) days, then Lessee shall have the option of terminating this lease. Notwithstanding the foregoing should Lessor determine in its sole discretion that the leased premises are completely destroyed or so badly damaged that repairs cannot be completed within a reasonable amount of time or at a reasonable expense Lessor may terminate the lease and tenant shall be released from any further obligation.

After terminating the lease with Iles Medical, RRF then leased the building to PARI, LLC. They signed a Lease Agreement with Option to Purchase on March 24, 2021. This lease has a term of 120 months and establishes rent at $4,000.00 per month.

According to Ms. Iles, commercial property was not readily available after RRF terminated the lease, but on April 29, 2021, it was able to lease property from Lake Charles Center, LLC for $5,300.00 per month and a $5,000.00 security deposit.

On September 22, 2021, Iles Medical filed a Petition for Damages against RRF in Lake Charles City Court. Therein, Iles Medical sought reimbursement for

4

the improvements it had made to the building prior to Hurricane Laura, which Dr. Fontenot had previously promised to pay given the termination of the lease. Iles Medical also sought damages under La.Civ.Code art. 1997 for RRF's bad faith failure to fulfill its obligations under the lease, despite RRF's promises to Iles Medical for over six months following Hurricane Laura that Iles would eventually be able to utilize the building as contemplated by the lease. Iles Medical also sought attorney fees as contemplated by the lease with RRF.

A bench trial was held November 2, 2022. Dr. Fontenot and Ms. Iles were the only witnesses called to testify. The following evidence was also accepted into the record: the August 2020 lease between RRF and Iles medical; text messages between Dr. Fontenot and Ms. Iles; the March 1, 2021 letter from RRF terminating the lease with Iles Medical; RRF's answers to interrogatories; emails between realtor Richman Reinauer and Ms. Iles; an itemization of Iles Medical's building improvement expenses and attached receipts; the lease between RRF and PARI, LLC; and the lease between Iles Medical and Lake Charles Center, LLC.

After hearing testimony and evidence and considering post-trial briefing, the city court rendered judgment against RRF, and in favor of Iles Medical, for $50,000.00, which is the city court's jurisdictional limit, as well as $12,500.00 in attorney fees, and interest from the date of jurisdictional demand. *See* La.Code Civ.P. arts. 4841, 4843(H).

The city court's written reasons for ruling indicate that the damages awarded includes $18,571.86 for improvements Iles Medical made to the building, as well as the difference in the increased rent ($2,000.00) for twenty-seven months as

5

damages for RRF's bad faith termination of the lease.[1] The city court's written reasons for ruling also awarded attorney fees as contemplated by the lease, finding that attorney fees in the amount of 25% of the damages awarded ($12,500.00) was reasonable when considering "the record, the evidence presented, and the work performed through trial and post-trial[.]"

RRF appeals. It asserts generally as its sole assignment of error that "[t]he trial court erred in granting judgment in favor of ILES MEDICAL TESTING, LLC, Lessee/Appellee." In its brief, RRF suggests that Iles sought reimbursement for minor cosmetic changes or alterations it made to the building, when the lease required Iles to assume those expenses. RRF also suggests that it had legal and contractual authority to, in its sole discretion, terminate the lease under Paragraph 17.

## ANALYSIS

As set forth in *Stobart v. State through Department of Transportation and Development*, 617 So.2d 880, 882 (La.1993):

> A court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." *Rosell v. ESCO*, 549 So.2d 840 (La.1989). This court has announced a two-part test for the reversal of a factfinder's determinations:
>
> 1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and

---

[1] The city court stated that Iles Medical:

[I]ncurred an increase in monthly lease payments from $3,000 per month to over $5,000 per month at the new location. The term of the original lease with RRF[] was August 1, 2020[,] to July 31, 2023. The new lease that [Iles Medical] signed with Lake Charles Center, LLC[] began on April 29, 2021. [Iles Medical] is entitled to receive the difference in lease payments, or $2,000 per month, from RRF in consequential damages for the period May 1, 2021[,] through July 31, 2023, or twenty-seven (27) months.

2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).

Louisiana Civil Code Article 2695 states in part as follows:

> In the absence of contrary agreement, upon termination of the lease, the rights and obligations of the parties with regard to attachments, additions, or other improvements made to the leased thing by the lessee are as follows:
>
> . . . .
>
> (2) If the lessee does not remove the improvements, the lessor may:
>
> (a) Appropriate ownership of the improvements by reimbursing the lessee for their costs or for the enhanced value of the leased thing whichever is less; or
>
> (b) Demand that the lessee remove the improvements within a reasonable time and restore the leased thing to its former condition. If the lessee fails to do so, the lessor may remove the improvements and restore the leased thing to its former condition at the expense of the lessee or appropriate ownership of the improvements without any obligation of reimbursement to the lessee. Appropriation of the improvement by the lessor may only be accomplished by providing additional notice by certified mail to the lessee after expiration of the time given the lessee to remove the improvements.

On appeal, RRF suggests that "[t]he Lessee made minor cosmetic changes or alterations to the leased premises[, and] [t]he money damages claimed by Lessee were actually made pursuant to [P]aragraph 8 of the lease agreement and therefore made at the expense of Lessee."[2] While RRF suggests in its brief that this was established by "uncontested testimony at trial," it does not cite this court to any testimony or evidence in the record regarding this issue, discuss any of the itemized reimbursements awarded by the city court, or otherwise provide any

---

[2] Paragraph 8 of the lease, entitled "Installation of Fixtures," states in part: "Lessee shall have the right at Lessee's expense to make minor cosmetic changes to their portion of the leased premises as it relates to carpet, equipment, internal partitions, or paint but not without express consent of the landlord which shall not be unreasonably withheld."

7

additional argument concerning the city court's award of Iles Medical's improvement expenses.

A review of the record reflects that Iles Medical elicited extensive testimony from Ms. Iles regarding claimed improvement expenses totaling $21,254.01 and submitted supporting documentation and receipts into the record. In addition, the city court requested post-trial briefing from the parties on this issue. Ultimately, the city court awarded $18,571.86 of the claimed expenses, stating in its written reasons for ruling:

> The testimony and evidence are clear and concise on the question of repayment of improvements made by Iles to Fontenot's building. Fontenot's own text messages (P-2) clearly demonstrate that she agreed to reimburse Iles for the cost of the improvements that were made to the building. This [c]ourt, however, has carefully reviewed the receipts and the itemization that Iles offered (P-7), and believes that [Iles Medical] is entitled to a portion of those expenditures[.]"

We cannot say that the city court's award of building improvement expenses was manifestly erroneous.

RRF also suggests on appeal that it "had the legal and contractual authority, in [its] sole discretion, to determine that the leased premises were completely destroyed, or so badly damaged, that repairs could not be completed within a reasonable amount of time or at a reasonable expense." While it does not cite this court to any supporting testimony or evidence in the record, RRF suggests in its brief that it had obtained a loan to make repairs to the building prior to the hurricane, and, after the hurricane, it was unable to collect sufficient insurance funds to restore the building, and the building could not be repaired timely. Therefore, according to RRF, it contacted a realtor in an effort to sell the building,

and located a potential buyer who ultimately entered into a lease with the option to purchase.

With regard to the evidence, the city court stated in its written reasons for ruling:

> This court is at a loss regarding the accuracy of facts surrounding Fontenot's pre-hurricane bank loan, as it was **not** offered into evidence by Fontenot. . . . No contractor repair estimates from Fontenot's contractor after the hurricane. No testimony from Fontenot's contractor. No evidence whatsoever, either entered into the record or via witness testimony.

In concluding that RRF impermissibly terminated the lease with Iles Medical in bad faith, the city court stated as follows:

> This [c]ourt believes that [RRF] did, in fact, breach the lease agreement with [Iles Medical]. As the testimony and evidence demonstrated, Fontenot agreed *not* to terminate the lease with [Iles Medical] after the hurricane. [Iles Medical] relied on Fontenot's representation and assurances and did not seek another building to get their business going after Hurricane Laura. It is clear to this [c]ourt that Fontenot was never happy with the terms of the lease between [Iles Medical] and RRF. The evidence demonstrates as far back as June of 2020, Fontenot was communicating with her realtor, complaining that she felt $3,000 per month was not enough money. This [c]ourt believes that Fontenot terminated the lease in bad faith, only **after** she was able to secure a new "tenant/buyer" for the building.

After reviewing the record, including the text messages between the parties prior to the March 2021 letter terminating the lease, we cannot say that the city court was manifestly erroneous in concluding that RRF impermissibly terminated its lease with Iles Medical.

### DECREE

For the reasons set forth above, the city court's judgment in favor of Iles Medical Test, LLC and against RRF Properties, LLC is hereby affirmed. Costs of this appeal are assessed to Appellant, RRF Properties, LLC.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION. Uniform Rules—Courts of Appeal, Rule 2–16.3